# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

STEVEN SCHAUF, JR., )
)
        **Plaintiff,** )
)
vs. ) Case No. 08-CV-0019-MJR
)
HAMPTON INN, )
)
        **Defendant.** )

## MEMORANDUM and ORDER

**REAGAN, District Judge:**

### A. Introduction and Background

On January 8, 2008, Steven Schauf, Jr., appearing *pro se*, filed the above-captioned action alleging discrimination based on race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e (Doc. 1). Therein, it appears that Schauf alleges three general aspects of his employment that he believes were discriminatory: (1) that he was required to wear long sleeve shirts to cover his tattoos, (2) that he was reassigned from his job as a desk clerk to a job as a housekeeper, and (3) that he was laid off from his position and was never rehired.

Schauf is a Native American and has tattoos on both arms. Hampton Inn hired Schauf as a part-time desk clerk in October 2006. At that time, he was informed that Hampton Inn's dress code prohibited desk clerks from having any tattoos exposed. As a result, he was required to wear a long sleeve shirt while working at the front desk.

Because occupancy decreases during the winter, Hampton Inn typically has to reduce the hours of its employees. In an effort to keep Schauf's hours from being reduced during the slow season, Hampton Inn offered him the position of houseman. Schauf took the position, which did not

include any reduction in his hourly pay. Despite the change in his position, he continued to wear long sleeves. At least one other houseman, a Caucasian, wore short sleeves even though he had visible tattoos on his arms. However, Schauf soon learned that he did not enjoy the houseman position.

In December 2006, Hampton Inn informed Schauf that he was being laid off during the remainder of the slow season, subject to recall after business picked up again. Schauf was never called back to work, even though Hampton Inn called others back in and hired additional employees.

On December 19, 2008, Defendant filed a motion for summary judgment (Doc. 14). Schauf submitted his reply on January 26, 2009 (Doc. 23). Having fully reviewed these documents, the Court hereby **GRANTS** summary judgment in favor of the Defendant and against Schauf.

### B. Standards Governing Summary Judgment Motions

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. ***Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)**. **FEDERAL RULE OF CIVIL PROCEDURE 56(c)** provides:

> [Summary judgment] should be rendered if the pleadings, the discovery and disclosure materials on file and any affidavits show that there is no genuine issue as to any material fact that the movant is entitled to as a matter of law.

Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the non-movant may not rest on the pleadings but must respond, with affidavits or otherwise, setting forth specific facts showing that there is a genuine issue for trial. ***Oest v. IDOC*, 240 F.3d 605, 610 (7th Cir. 2001);** ***Moore v. J.B. Hunt Transport, Inc.*, 221 F.3d 944, 950 (7th Cir. 2000).** The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." ***Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,**

**248 (1986).**

The burden is on the non-moving party to produce specific facts that show a genuine issue for trial. **FED.R.CIV.P. 56(e);** *Moore*, **221 F.3d at 950.** "Conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment." *Haywood v. North American Van Lines, Inc.*, **121 F.3d 1066**, **1071 (7th Cir. 1997);** *see also* **FED.R.CIV.P. 56(e) ("an opposing party may not rely merely on allegations or denials in its own pleading")**.

In ruling on a summary judgment motion, this Court must construe the evidence and all inferences reasonably drawn therefrom in the light most favorable to the non-moving party. *Anderson*, **477 U.S. at 255.**

### C. Analysis

Title VII forbids employers "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race. . . ." **42 U.S.C. § 2000e-2(a)(1)**. A Title VII plaintiff must either (a) provide direct evidence of an employer's discriminatory intent, or (b) show disparate treatment using the indirect, burden-shifting method established in *McDonnell Douglas Corp. v. Green*, **411 U.S. 792, 802-04 (1973).** *See Contreras v. Suncast Corp.*, **237 F.3d 756, 759 (7th Cir.),** *cert. denied*, **534 U.S. 824 (2001)**. Because Schauf has presented no direct evidence of race discrimination, the Court turns to the indirect, burden-shifting method.

To prevail under the indirect approach, the plaintiff first must establish a *prima facie* case of discrimination, which requires him to prove: "(1) he is a member of a protected class; (2) he was meeting his employer's legitimate expectations at the time of the alleged adverse action; (3) he was subjected to an adverse employment action; and (4) the employer treated similarly situated

employees not in the protected class more favorably." *Anders v. Waste Mgmt. of Wisconsin*, 463 F.3d 670, 676 (7th Cir. 2006) (quoting *Scaife v. Cook County*, 446 F.3d 735, 739 (7th Cir. 2006)). The Seventh Circuit repeatedly has stressed that a Title VII plaintiff must establish, not merely incant, each of these elements. *Grayson v. O'Neill*, 308 F.3d 808, 818 (7th Cir. 2002); *Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1006 (7th Cir. 2002); *Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1179 (7th Cir. 1997).

Once the plaintiff has met his burden of establishing a *prima facie* case, "a presumption of discrimination arises, and the employer must articulate a legitimate and non-discriminatory reason for the employment action" in question. *Moser v. Indiana Dep't of Corr.,* 406 F.3d 895, 900 (7th Cir. 2005); *McDonnell Douglas*, 411 U.S. at 802-03. At this stage, the employer is not required to "prove that it was actually motivated by the proffered reason. Rather, an employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Rudin v. Lincoln Land Community College,* 420 F.3d 712, 724-25 (7th Cir. 2005) (citing *Stockett v. Muncie Indiana Transit Sys.,* 221 F.3d 997, 1001 (7th Cir. 2000)). And if this is accomplished, the burden shifts back to the plaintiff to show that the employer's reasons are pretexual. *Jackson v. City of Chicago*, 552 F.3d 619, 622 (7th Cir. 2009). Importantly, the ultimate burden of proof that the employer discriminated remains on the plaintiff at all times. *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 398 (7th Cir. 1997).

Having carefully reviewed the record, the Court concludes that Schauf fails to establish a *prima facie* case of race discrimination. Two elements are not in dispute. Hampton Inn does not contest that as a Native American, Schauf is a member of a protected class. Additionally, Hampton Inn admits that Schauf was meeting the employer's legitimate expectations. With respect

to the other two elements, the Court analyzes Schauf's claim in light of his particular allegations of discrimination.

**1.  Requiring Schauf to Cover his Tattoos**

First, the Court considers Schauf's allegation that Hampton Inn discriminated against him by requiring that he wear a long-sleeve shirt to cover his tattoos. Under the heading "Standards of Dress," Hampton Inn's associate handbook states: "Body piercing or tattoos should not be visible" (Doc. 14-3, Exh. B, at 4-5). On his first day, Schauf was informed of the policy that employees at the front desk could not have visible tattoos (Doc. 14-2, Exh. A, Schauf Depo. at 12, 27). As a result, his manager took him to the mall in order to purchase a long sleeve shirt to cover his tattoos at the front desk (Doc. 14-2, Exh. A, Schauf Depo. at 10-12). Schauf understood the policy and did not object (Doc. 14-2, Exh. A, Schauf Depo. at 27-28; *see* Doc. 14-4, Exh. C, Morrey Depo. at 27-28).

When Schauf changed positions from a desk clerk to a houseman, he continued to wear the long-sleeve shirt. But Schauf admits that he was permitted to wear a short-sleeve shirt in his position as a houseman, but he opted to wear the shirt that had been purchased for him.

> Q.  Do you recall while you were employed at Hampton Inn if any of the other employees, regardless of their race that had tattoos, if they actually wore long-sleeved shirts to cover those tattoos?
> A.  No.  They told me that with the houseman job it didn't matter. They said I could wear short sleeves and I could wear the houseman's shirt because I wasn't behind the desk. But other than that—
> Q.  So while you were employed as a houseman at Hampton Inn, you were allowed to wear a short-sleeved shirt and expose your tattoos?
> A.  They told me I was, but I never did.  I wore the same shirt that they ordered for me.
> Q.  Hampton Inn just requested that you wear a long-sleeved shirt while you were working as a front desk clerk?
> A.  Yes, ma'am.  (Doc. 14-2, Exh. A, Schauf Depo. at 34).

Additionally, Kevin Morrey, general manager for Hampton Inn, confirmed that while employees

working at the front desk cannot expose tattoos, maintenance employees are permitted to wear short sleeves, even if they have tattoos on their arms (Doc. 14-4, Exh. C, Morrey Depo. at 28-29; Doc. 23-6, Exh. L, Morrey Depo. at 39).

The question is whether the requirement that Schauf wear long sleeves to cover his tattoos constitutes an adverse employment action for the purposes of Title VII. It clearly does not. In determining whether an employment action is adverse, the Court analyzes the issue "from the perspective of a reasonable person in the plaintiff's position," in light of all the circumstances. ***Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1119-20 (7th Cir. 2009).** Obviously, the requirement that Schauf wear long sleeves did not affect his opportunities for advancement, affect his pay or hours, or even inconvenience him. Indeed, Hampton Inn provided Schauf with a shirt to wear while on duty and Schauf himself had no problem with the policy. Moreover, Schauf continued to wear long sleeves as a houseman, even though he admits that he could have worn short sleeves if he so desired.

In light of the facts in the record, Schauf has failed to establish that the policy requiring him to wear long sleeves constitutes a material adverse employment action. Accordingly, Schauf is unable to establish a *prima facie* case of discrimination, and this claim must be dismissed.

**2. Schauf's Change in Position from Desk Clerk to Houseman**

Similarly, Schauf has failed to show that his change in position from desk clerk to houseman was a material adverse employment action. Schauf was hired as a part-time desk clerk in October 2006, and retained that position for approximately six weeks at a pay rate of $7 per hour (Doc. 14-2, Exh. A, Schauf Depo. at 6, 10, 18). However, as the slow winter season approached, Hampton Inn informed Schauf that his hours at the desk would be decreased (Doc. 14-4, Exh. C, Morrey Depo. at 29-30). To avoid this decrease in hours, Schauf was offered a position as a

houseman (Doc. 14-4, Exh. C, Morrey Depo. at 30; Doc. 14-2, Exh. A, Schauf Depo. at 16; Doc. 23-9, Exh. Q, Morrey Depo. at 41). Schauf did become a houseman, and this che change in position did not result in a decrease in his pay (Doc. 14-2, Exh. A, Schauf Depo. at 16). Schauf initially had no objection to the change (Doc. 14-2, Exh. A, Schauf Depo. at 16; Doc. 14-4, Exh. C, at 30). At some point, though, Schauf indicated that he did not like the position and no longer wanted to be a houseman (Doc. 14-4, Exh. C, Morrey Depo. at 32; Doc. 23-9, Exh. P, Morrey Depo.).

There is nothing in the record to indicate that Schauf's change in position constituted a material adverse employment action. The change was apparently made in order to ensure that Schauf's hours could be maximized in light of the decrease in occupancy. Had he remained a desk clerk, his hours would have necessarily decreased. As Morrey explained: "We offered you the houseman job to try to get you more hours, because we had an opening over there. We thought we were helping" (Doc. 23-9, Exh. Q, Morrey Depo. at 41). Additionally, the change in positions did not adversely affect Schauf's pay. Importantly, he had no initial objection to the move from desk clerk to houseman. Only after he performed the job for a period did he indicate dissatisfaction. But "a materially adverse change must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities." ***Nagle*, 554 F.3d at 1120 (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)).**

In light of this, Schauf has failed to show that his change in position from a desk clerk to a houseman rose to the level of a material adverse employment action. Accordingly, Schauf has not established a *prima facie* case of race discrimination, and this claim must also be dismissed.

**3. Schauf's Reduction of Hours Subject to Recall**

Schauf's final claim is that Hampton Inn discriminated against him when Schauf was taken off the schedule and never called back to work. Though Schauf claims he was "laid off," he

explains that he understood this to mean that he was to be taken off the schedule until business picked up again, at which point Hampton Inn would call him for work (Doc. 14-2, Exh. A, Schauf Depo. at 7). Morrey confirms this understanding, stating that Schauf's hours were merely "reduced because occupancy had gone down" (Doc. 23-9, Exh. Q, Morrey Depo. at 41). However, Schauf was never called back for work, even though Hampton Inn hired other employees, including at least one Caucasian (Doc. 14-2, Exh. A, Schauf Depo. at 18-19; *see* Doc. 23-7, Exh. M, Schauf Depo.). Morrey claims that Schauf was never called back for work, because Morrey was under the impression that Schauf was moving away (Doc. 14-4, Exh. C, Morrey Depo. at 32-33; Doc. 23-3, Exh. B, Morrey Depo. at 42).

Obviously, this course of events constitutes an adverse employment action. Schauf was either laid off, terminated, or had his hours reduced to zero and never increased. The primary question for the Court is whether Schauf has identified a similarly situated individual outside the protected class who was treated more favorably.

Schauf only refers to two other employees who were treated more favorably: Marc Jackson and an unknown employee, both of whom are white and were permitted to wear short sleeves despite tattoos on their arms. Schauf makes much of the fact that these two Caucasian employees were permitted to expose their tattoos. However, as already noted above, Schauf admits that he too could have worn short sleeves while working in the houseman position (Doc. 14-2, Exh. A, Schauf Depo. at 34). Consequently, it is difficult to see how either of the individuals he points to were treated more favorably in this regard.

Schauf never identifies a single employee who was both laid off during the slow season and then later called back to work. At best, the record indicates that some employees,

whether members of a protected class or not, were recalled after having their hours reduced.[1] Morrey stated: "If you are asking me were there people whose hours were reduced when it was low occupancy and then as occupancy went up their hours were increased, yes, that happened in a number of departments, both housekeeping and front desk" (Doc. 23-3, Exh. B, Morrey Depo. 42). But the record is silent as to whether these employees were members of a protected class.

Schauf does provide evidence that an unknown white employee was hired as a houseman in the period after Schauf was "laid off," but it is not clear that this individual is similarly situated either. Presumably, the new houseman was hired after contacting Hampton Inn for employment. Schauf, on the other hand, admits that he never attempted to contact Hampton Inn to be placed back on the schedule.

Even if the Court was to consider the newly hired houseman and/or the employees who had their hours increased to be similarly situated, Hampton Inn has offered a non-discriminatory reason for reducing Schauf's hours and then failing to call him back to work. Specifically, Morrey stated that Schauf's hours were reduced because of the downturn in business during the winter months. Additionally, Morrey claimed that he never called Schauf back to work because he was under the impression that Schauf had moved away. The Court need not determine

---

[1] Schauf does supply the Court with a purported schedule, showing that he and three other employees (Valentine Glover, Leah Sheeran, and Joey Bell) were listed as "off" from January 22 through February 4 (Doc. 23-5, Exhs. D–K). Supposedly, that designation signifies that these four employees had been "laid off" subject to recall. Schauf then supplies schedules for four weeks in July and August. But of the four employees who were allegedly "laid off," only Valentine Glover reappears on the July schedule. Apparently, the other two employees were never recalled, just like Schauf. Obviously then, neither Sheeran nor Bell were treated more favorably than Schauf. In any event, Schauf does not indicate whether Sheeran or Bell were members of a protected class or not.

The schedule does include references to new employees hired after Schauf's hours were reduced, but there is no explanation of the circumstances surrounding these employees or their race(s). As a result, these exhibits do not aid Schauf's claims at all.

And in any case, it is not clear that this schedule is authentic or admissible.

whether these were the actual reasons for Hampton Inn's actions. It is sufficient that a rational trier of fact could conclude that these decisions were not motivated by a discriminatory animus. In that case, the burden would shift back to Schauf to present evidence that these reasons are pretextual. Schauf fails to provide any evidence whatsoever of pretext.

Schauf has failed to meet his burden with respect to the claim that Hampton Inn was discriminating against him when it reduced his hours and failed to call him back to work. Consequently, this claim must be dismissed.

### D. Conclusion

For the reasons thoroughly explained above, the Court hereby **GRANTS** Hampton Inn's motion for summary judgment (Doc. 14). Accordingly, this action is **DISMISSED with prejudice.**

**IT IS SO ORDERED.**

**DATED this 24th day of March 2009.**

    **s/ Michael J. Reagan**
    **MICHAEL J. REAGAN**
    **United States District Judge**